UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DAVID J. MARCK, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-10 (RMC) |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION

David Marck and Sills Cummis & Gross, P.C. (collectively, Mr. Marck) sue the Department of Health and Human Services (HHS), Food and Drug Administration (FDA), Department of Justice (DOJ), and Federal Bureau of Investigation (FBI) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2012), challenging the adequacy of those agencies' response to its FOIA requests. All claims against HHS and FDA were previously dismissed and the parties have narrowed the remaining issues to six pages of records redacted or withheld by FBI, a constituent agency of DOJ. FBI now moves for summary judgment and Mr. Marck requests *in camera* review of the six pages so the Court can determine the propriety of the redactions. The Court will grant FBI's motion for summary judgment and deny Mr. Marck's motion for *in camera* review.

I. BACKGROUND

Mr. Marck is an attorney formerly of the law firm Sills Cummis & Gross, P.C. Pls.' Opp'n to the Gov't's Mot. for Summ. J. (Opp'n) [Dkt. 26] at 4. On April 16, 2014, Mr. Marck filed the underlying FOIA requests with FBI on behalf of his client Mark Cocchiola and

1

his wife, Anne Cocchiola. *Id*. On April 17, 2014, he supplemented the request. *Id*.; *see also* Ex. A, Decl. of David M. Hardy, April 16, 2014 FOIA Request (April 16 FOIA Req.) [Dkt. 24-1] at 29; Ex. B, Decl. of David M. Hardy, April 17, 2014 FOIA Request (April 17 FOIA Req.) [Dkt. 24-1] at 32.[1] Collectively, the FOIA requests asked for records pertaining to the following persons and entities:

| Individuals | Entities |
|---|---|
| 1. Mark Cocchiola | 1. Suprema Specialties |
| 2. Jack Gaglio | 2. Whitehall Specialties |
| 3. Paul Lauriero | 3. A&J Foods, Inc. |
| 4. Robert Quattrone | 4. Hidden Valley Ranch |
| 5. George Vieira | 5. Noble JG Cheese |
| 6. Paul Zambas | 6. California Goldfield |
| 7. Arthur Christensen | 7. West Coast Commodities |
| 8. Lawrence Fransen | 8. California Milk Market |
| 9. John Van Sickell | 9. Wall Street Cheese |
| 10. Steven Venechanos | 10. LNN Enterprises |
| 11. Chris Lotito | 11. A&J Cheese Company |
| 12. Chester Destefano | 12. Lotito Foods |
| 13. Steven Fawcett | 13. Mrs. Mazzula's Foods |
| | 14. Destefano Foods |
| | 15. Roma Foods |
| | 16. Piancone Food Service, Inc. |
| | 17. Capri Foods |
| | 18. Marlboro Foods |

*See* April 17 FOIA Req. at 32-33.

On April 23, 2014, FBI acknowledged receipt of Mr. Marck's FOIA requests for records pertaining to third-party individuals, assigned it FOIA request number 1260681-000, and notified Mr. Marck that further information was required before third-party records could be

---

[1] All page-number references to the Hardy Declaration Exhibits, FBI's Motion for Summary Judgment, and FBI's Reply in Support of its Motion for Summary Judgment are to the electronic case filing (ECF) page number.

2

processed. Decl. of David M. Hardy (Hardy Decl.) [Dkt. 29-1] ¶ 6.[2] On May 7, 2014, FBI acknowledged receipt of Mr. Marck's FOIA requests for information pertaining to the non-person entities Suprema Specialties, Whitehall Specialties, A&J Foods, Inc., Hidden Valley Ranch, Noble JG Cheese, California Goldfield, West Coast Commodities, California Milk Market, Wall Street Cheese, LNN Enterprises, A&J Cheese Company, Lotito Foods, Mrs. Mazzula's Foods, Destefano Foods, Roma Foods, Piancone Food Service, Inc., Capri Foods, and Marlboro Foods and assigned them, respectively, FOIA request numbers 1264018-000, 1263861-000, 1264075-000, 1263859-000, 1264153-000, 1263885-000, 1264033-000, 1263871-000, 1263825-000, 1263865-000, 1263838-000, 1263852-000, 1263772-000, and 1321143-000. *Id*. ¶¶ 5, 7; *see also id*. at 3 n.3.[3] In late May 2014, FOIA request number 1260681-000, pertaining to the individuals, was administratively closed because Mr. Marck failed to provide the necessary additional information to justify the disclosure of third-party information. *Id*. ¶ 8. On January 5, 2015, Mr. Marck filed this lawsuit "stating that no records had been received from the FBI regarding any individual or entity listed in his FOIA request[s]." *Id*. ¶ 10; *see also* Compl. [Dkt. 1].

Since the beginning of this litigation, FBI has "processed a total of 6,674 responsive pages and released . . . a total of 2,278 pages" to Mr. Marck. Hardy Decl. ¶ 4. FBI released the records in twelve productions between March 26, 2015 and June 9, 2017. *Id*. ¶¶ 13-26. Mr. Marck now only challenges the legitimacy of redactions made on six pages of records:

---

[2] In order to receive records pertaining to a third-party individual, the requester "must provide one of the following: (1) an authorization and consent from the individual; (2) proof of death; or (3) a justification that the public interest in disclosure outweighs personal privacy." Hardy Decl. ¶ 6.

[3] Destefano Foods, Roma Foods, Piancone Food Service, Inc., Capri Foods, and Marlboro Foods were all assigned FOIA request number 1321143-000. *Id*. ¶ 5.

3

Bates numbers Marck 76-79 and 101-102. *Id.* ¶ 27. Those pages "comprise a Form FD-302 dated February 4, 2002" and "an Electronic Communication ("EC") dated February 4, 2002, generated by a Special Agent ("SA") from the La Crosse Resident Agency sent to the Newark Field Office ("FO")." Mot. for Summ. J. [Dkt. 24] at 7 (citing Hardy Decl. ¶ 4). FBI withheld and redacted information pursuant to FOIA Exemptions 3, 6, 7(C), and 7(D) because that information included grand jury material and "records generated during an investigation that, if released, would needlessly violate the privacy interests of FBI Special Agents, third parties merely mentioned in investigative files, and third parties who provided information to the FBI under an expectation of confidentiality." FBI's Reply in Supp. of its Mot. for Summ. J. (Reply) [Dkt. 27] at 1.

On August 31, 2017, FBI moved for summary judgment. *See* Mot. Mr. Marck opposed, *see* Opp'n, and FBI replied. *See* Reply.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is the typical vehicle to resolve an action brought under FOIA. *See McLaughlin v. DOJ*, 530 F. Supp. 2d 210, 212 (D.D.C. 2008). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, a court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

4

U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248.

### B. FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). FOIA cases typically and appropriately are decided on motions for summary judgment. *See Wolf*, 473 F.3d at 374; *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[A]gency declarations generally are entitled to a presumption of good faith, and therefore, to successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Ahuruonye v. Dep't of Interior*, 239 F. Supp. 3d 136, 141 (D.D.C. 2017) (internal citations omitted).

A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt

5

information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011).

### III. ANALYSIS

As Mr. Marck does not challenge the adequacy of FBI's search and only contests FBI's failure to release six pages of records without redactions, the Court will assume the adequacy of the search and evaluate the exemptions claimed for the six pages at issue.

**A. Objections to Withholdings from Records**

In a FOIA action, a defendant must demonstrate that any information withheld from disclosure is exempt and that the agency segregated non-exempt materials. *See* 5 U.S.C. § 552(a)(4)(B), (b). An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (internal quotations omitted); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Mr. Marck challenges the redactions on four pages (76, 79, 101, and 102) and the complete withholding of two pages (77 and 78). *See* Ex. U, Hardy Decl., Bates numbers Marck 76-79 and 101-02 [Dkt. 24-1] at 108-112. FBI applied Exemptions 3, 6, 7(C), and 7(D) to redactions and withholding made throughout those pages.

*1. Exemption (3)*

Under 5 U.S.C. § 552(b)(3), an agency *must* withhold records or information that is:

> specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

6

(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). FBI justifies withholding in their entirety pages 77 and 78 and all but three redactions in the remaining pages under Exemption 3 because the information is related to grand jury proceedings and protected by Rule 6(e) of the Federal Rules of Criminal Procedure.[4] "Rule 6(e) applies if the disclosed material would 'tend to reveal some secret aspect of the grand jury's investigation,' including 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation,' or 'the deliberations or questions of jurors.'" *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Senate of the Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987)).

FBI explains that the information redacted or withheld under Exemption 3 contains the name and identifying information of "a third party individual who . . . received a Federal Grand Jury subpoena" and that "[d]isclosure would reveal the private, inner workings of this Federal Grand Jury by disclosing who the Federal Grand Jury targeted as being likely to have relevant information." Hardy Decl. ¶ 36. Additionally, the information identifies the third party individual's role in relation to the crime being investigated and, if disclosed, would allow Mr. Marck to identify the individual. *Id*. Mr. Marck challenges FBI's argument that revealing the redacted information would disclose the private, inner workings of the federal grand jury,

---

[4] "[A]lthough a rule is not generally considered to be a statute, [Rule 6(e) of the Federal Rules of Criminal Procedure] qualifies as one under FOIA because the Congress has enacted it into positive law." *Murphy v. Exec. Office for United States Attorney*, 789 F.3d 204, 206 (D.C. Cir. 2015) (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981)); *see also* Pub. L. No. 95-78, § 2(a), 91 Stat. 319 (1977) (enacting Federal Rule of Criminal Procedure 6(e) into positive law).

arguing that FBI's contention that the documents "were produced or created as the result of a grand jury proceeding" is insufficient to justify withholding under Exemption 3. Opp'n at 8. He further argues that because he and his clients can predict the name of the individual whose interview is the subject of the redacted documents, withholding is not justified because the identity of the individual "is no secret." *Id*. at 9.

Exemption 3 protects grand jury information when the material would "tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors." *Hodge*, 703 F.3d at 580 (internal quotations omitted); *see also Fund for Constitutional Gov't*, 656 F.2d at 869-70 ("Potential witnesses and potential documentary exhibits [in a grand jury proceeding], while less clearly within the rule, if disclosed would reveal the direction and strategy of the investigation."); *Boehm v. FBI*, 983 F. Supp. 2d 154, 157-60 (D.D.C. 2013). FBI explained that the withheld information includes the identity of a subpoenaed witness, as well as the information provided by that witness, which would enable others to identify him or her and disclose the substance of the testimony that individual gave or intended to give the grand jury. Therefore, the withholding of pages 77 and 78, and the redactions made under Exemption 3, constitute grand jury information that must be excluded from FOIA release. The fact that Mr. Marck believes he already knows the name of the third-party individual whose identity is being protected does not remove the mandatory protections provided to grand jury information. FBI has adequately shown that its withholdings and redactions under Exemption 3 were appropriate. Mr. Marck has produced no evidence of bad faith which might call FBI's arguments into question.

## 2. Exemptions 6 and 7(C)

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure." *Lardner v. DOJ*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). The threshold is "fairly minimal," and "[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Washington Post Co. v. HHS*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *State v. Washington Post*, 456 U.S. at 602) (internal quotation marks omitted).

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The privacy interest at stake belongs to the individual, not the agency. *See Reporters Comm.*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a significant public interest sufficient to outweigh an individual's privacy interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Similarly, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(7)(C).[5] Courts apply a balancing test to determine whether personal information is exempt under 7(C). Courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal citations omitted).

FBI claims that the three remaining redactions are justified under Exemptions 6 and 7(C) because they include the "names and identifying information of FBI Special Agents."[6] Hardy Decl. ¶ 43. FBI further explains that the special agents were responsible for "conducting interviews, coordinating with other law enforcement officials, and compiling the resulting information, as well as reporting on the status of the investigation"; and "[p]ublicity . . . regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness" or "result in reasonable but nonetheless serious disturbances to . . . their lives." *Id.* ¶¶ 43-44. Mr. Marck argues that balancing the privacy interests against the "public interest in free and open information about potential Government misconduct" requires disclosure. Opp'n at 10.

Courts routinely permit law enforcement agencies to redact the names and identifying information of their agents. *See, e.g.*, *Lesar v. DOJ*, 636 F.2d 472, 487-88 (D.C. Cir. 1980); *Ford v. DOJ*, 208 F. Supp. 3d 237, 250-51 (D.D.C. 2016). The only relevant public

---

[5] Law enforcement records include both criminal and civil investigatory and non-investigatory materials. *See Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002); *North v. Walsh*, 881 F.2d 1088, 1098 (D.C. Cir. 1989). The investigation at issue in this case was conducted by FBI into potential fraud and, therefore, was conducted for law enforcement purposes. *See Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002).

[6] Due to the similarity between the standards for Exemption 6 and 7(C), the Court will consider them together. If the redactions satisfy the Exemption 7(C) test, there is no need to independently consider Exemption 6.

interest for purposes of Exemption 7(C) is that of shedding light on the agency's performance of its statutory duties. *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (citing *Reporters Comm.*, 489 U.S. at 773). To obtain disclosure of private information, a FOIA requester must at a minimum "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174; *see also Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011). Otherwise, the balancing requirement simply does not come into play. *Favish*, 541 U.S. at 175. "Unsubstantiated assertions of government wrongdoing . . . do not establish a meaningful evidentiary showing." *Boyd v. Criminal Div. of the Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 175).

Mr. Marck argues that the privacy interests at issue are outweighed by the "public interest in uncovering Government misconduct; specifically that, contrary to information repeated throughout Mr. Cocchiola's trial, the government was investigating Suprema [Mr. Cocchiola's company] long before . . . December 2001." Opp'n at 11. Mr. Marck contends that the redacted pages "relate[] to Mr. [Steven] Fawcett's cooperation with the government prior to December 19, 2001" and that from those documents "it can . . . be inferred that Mr. Fawcett traded information about Suprema—truthful or otherwise—for lenient treatment by the Government with respect to [his] own fraudulent scheme." *Id*. Mr. Marck speculates that, through a suspicious deal with Mr. Fawcett, government misconduct occurred in the investigation and prosecution of Mr. Cocchiola, but provides no evidence that "warrant[s] a belief by a reasonable person" that any misconduct occurred. *Favish*, 541 U.S. at 174. His assumption that the redacted documents will show that Mr. Fawcett cooperated with the government prior to the date its investigation began is just that, an assumption. Additionally,

11

Mr. Marck provides no reason to believe that even if the document does show that Mr. Fawcett was interviewed prior to December 2001, it leads to the conclusion that FBI engaged in misconduct. Because "[u]nsubstantiated assertions of government wrongdoing . . . do not establish a meaningful evidentiary showing" sufficient to overcome the privacy interests protected by Exemption 7(C), *Boyd*, 475 F.3d at 388, Mr. Marck has not raised a sufficient challenge to the privacy interests at issue here and FBI's withholdings and redactions under Exemptions 6 and 7(C) are justified.

FBI also redacted information to protect the names and/or identities of third parties who "came into contact with the subjects of the investigations," including third parties merely mentioned, third parties who provided information to the FBI, and commercial institution personnel. Mot. at 16; *see also* Hardy Decl. ¶¶ 31, 45-48. These individuals "were not of investigative interest to the FBI"; therefore, FBI argued that "[d]isclosure of these third parties' names and identifying information in connection with the FBI's investigation of criminal activities carries an extremely negative connotation." Mot. at 16. Because this information is also covered by Exemption 3, the Court's analysis will be brief. Third parties involved in law enforcement investigations have a strong privacy interest. *See, e.g.*, *Reporters Comm.*, 489 U.S. at 773 (holding that public interest is "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct"); *Comput. Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996); *Mack v. Dep't of Navy*, 259 F. Supp. 2d 99, 106-08 (D.D.C. 2003). Mr. Marck fails to provide more than a speculative public interest and, therefore, cannot overcome the privacy interest of the third parties and commercial institution personnel.

3. *Exemption 7(D)*[7]

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A source's confidentiality is determined on a case-by-case basis, and a court must determine "whether the particular *source* spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995). The nature of the investigation and the informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Landano*, 508 U.S. at 179-80.

FBI redacted the "name, identifying information about, and information provided by a third party" who "provided accurate and reliable information concerning the activities of subjects who were of investigative interest to the FBI or other law enforcement agencies." Hardy Decl. ¶ 52. FBI "inferred that the individual provided information to the FBI only because they believed their cooperation with, and the information they provided, would remain confidential." *Id*. Based on the individual's relationship to the targets, FBI argues that "[t]he

---

[7] All of the information protected by FBI under Exemption 7(D) was also protected under Exemptions 3, 6, and 7(C). Therefore, even if Exemption 7(D) were found not to apply, all of the information was properly withheld under another exemption.

disclosure of the identity of this source and the information provided could have disastrous consequences because disclosure could subject the third party, as well as their family, to embarrassment, humiliation, and/or physical or mental harm." *Id*. Mr. Marck argues that Exemption 7(D) only applies if FBI demonstrates that the source was provided an express grant of confidentiality, or provides "evidence supporting a determination that the particular source spoke with an understanding that the communication would remain confidential." Opp'n at 13 (internal citation omitted). Inferring that the source believed the information was protected, Mr. Marck states, is not sufficient.

Mr. Marck correctly argues that an agency must do more than simply state that a source provided information on a confidential basis. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1101 (D.C. Cir. 2014). However, implied or inferred assurances of confidentiality are also recognized by the D.C. Circuit. *See Williams*, 69 F.3d at 1159. If an agency does not "present probative evidence that the source did in fact receive an express grant of confidentiality," then it must "point to more narrowly defined circumstances that support the inference of confidentiality." *Citizens for Responsibility & Ethics in Washington*, 746 F.3d at 1101. Courts in this Circuit consider four factors in assessing implied assurances of confidentiality:

> the character of the crime at issue, the source's relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency and typically communicates with the agency only at locations and under conditions which assure the contact will not be noticed.

*Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).

The crimes at issue included conspiracy to defraud the United States; bank fraud; fraud by wire, radio, or television; and securities violations. *See* Ex. A, Opp'n [Dkt. 26-3] at 3. The investigation resulted in criminal convictions and a sentence for Mr. Cocchiola of 180

14

months' incarceration. *See* Opp'n at 3. The seriousness of the offense and the resulting punishment weigh in favor of finding cooperator confidentiality. Additionally, Mr. Hardy's declaration specifically describes the close relationship between the source and the target, explaining that the source was "in a position to have ready access to and/or knowledge about targets and others involved in fraudulent activities." Hardy Decl. ¶ 52. Finally, the source was subpoenaed to testify before the grand jury, which supports a finding of implied confidentiality to the pre-subpoena information he gave to FBI. The Court, therefore, finds that the information was properly withheld under Exemption 7(D).

### B. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification rather than conclusory statements. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Mr. Marck argues that the extent of the redactions on pages 76-79 and 101-102 demonstrate that FBI failed to segregate non-exempt information. He points specifically to pages 77 and 78, which were withheld in full. *See* Opp'n at 14. FBI responds that it "took seriously its obligation to segregate material that could be released from material that must be withheld under the applicable Exemptions." Reply at 2-3.

To enable a court to perform a review of segregability the agency must provide "not only a detailed justification of the reasons for withholding information, but also a description of the document from which the information was redacted." *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 109 (D.D.C. 2009); *see also Mead Data Cent.*, 566 F.2d at 260-61. In his declaration, Mr. Hardy describes how the six pages were processed to determine if non-exempt information were segregable from that protected by an exemption. For the pages redacted in part, he explains that the "pages comprise a mixture of material that would be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions." Hardy Decl. ¶ 54(A). As to the two pages withheld in full, he explains that any "non-exempt information on these pages was so intertwined with exempt material, that no information could be reasonably segregated for release" and that "[a]ny further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content." *Id.* ¶ 54(B). "FOIA requires only separation of what is reasonably segregable, permitting the agency to avoid committing significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Wadelton v. Dep't of State*, 106 F. Supp. 3d 139, 155 (D.C. Cir. 2015). While Mr. Marck may desire fewer redactions, the Court finds that FBI has adequately explained that all segregable information has been provided and only exempt information was redacted.

### C. *In Camera* Review

Trial courts are afforded broad discretion to "examine the contents of" requested records "in camera to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).

16

However, "'[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.'" *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

Mr. Marck asks the Court to review *in camera* the six pages of records at issue to determine if FBI properly applied the FOIA exemptions and if there is non-exempt information that should be released. Because this case is not one where the agency's declarations are "'insufficiently detailed to permit meaningful review of exemption claims,'" *in camera* review is unnecessary. *Plunkett v. DOJ*, No. 11-341, 2015 WL 5159489, at *12 (D.D.C. Sept. 1, 2015) (quoting *Quiñon*, 86 F.3d at 1228) (declining *in camera* review because agency's affidavits sufficiently explained its reasons for redacting information under FOIA exemptions).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant FBI's motion for summary judgment and deny Mr. Marck's motion for *in camera* review. A memorializing Order accompanies this Opinion.

Date: June 5, 2018                    /s/
ROSEMARY M. COLLYER
United States District Judge